IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

DAVID ULLOM,

        Plaintiff,

v.                                    CIVIL ACTION NO.   3:22-0255

RUST-OLEUM CORPORATION,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Rust-Oleum Corporation's Motion to Dismiss Plaintiff's Complaint. ECF No. 5. For the following reasons, the Court **DENIES** the motion.

**I.**
**BACKGROUND**

In his Complaint, Plaintiff David Ullom asserts that he was employed by Defendant at its plant located in Lesage, West Virginia. Plaintiff, who is white,[1] alleges that there were no persons of color regularly employed at the Lesage plant. When a person of color is hired, Plaintiff asserts the person's employment ends within a week or so. Plaintiff states that, in April 2022, he "made a protected report of discrimination to the Defendant alleging that several white employees of the plant were using derogatory language and making racially insensitive remarks about black persons." *Compl.* at ¶13. After making his report, Plaintiff claims that he was mocked by several

---

[1] Plaintiff does not expressly state he is white in his Complaint. However, it can be easily inferred from the Complaint, and he admits in his Response that he "is not a person of color." *Pl.'s Resp.*, at 5, ECF No. 8.

employees and, on May 10, 2022, he was physically assaulted by an employee whom Plaintiff had reported to Defendant as making improper racial comments.

Nine days after the assault, Defendant terminated Plaintiff. According to Plaintiff, Defendant stated he was terminated for allegedly harassing the employee who assaulted him. Plaintiff claims Defendant never investigated his reports of inappropriate racial comments before he was fired.

Following his termination, Plaintiff filed this action for violations of the West Virginia Human Rights Act (WVHRA), West Virginia Code § 5-11-1 *et seq*. In Count I of his Complaint, Plaintiff alleges a claim for retaliatory discharge. In Count II, he asserts a claim for hostile work environment. Defendant moves to dismiss both counts under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a claim.

## II.
## STANDARD OF REVIEW

Pursuant to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), courts must look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum

expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679.

## III.
## DISCUSSION

### A.
### Retaliatory Discharge

In its motion, Defendant initially seeks to dismiss Plaintiff's retaliatory discharge claim by arguing his reporting of racially charged remarks to his employer is not a protected activity under the WVHRA because the remarks were not directed against Plaintiff's own race. Defendant specifically points to West Virginia Code § 5-11-9(3), which provides it is "an unlawful discriminatory practice . . . [f]or any labor organization because of race . . . to deny full and equal membership rights to any individual or otherwise to discriminate against such individual with respect to hire, tenure, terms, conditions or privileges of employment or any other matter, directly or indirectly, related to employment." W. Va. Code § 5-11-9(3), in part. Defendant further argues his claim fails because he did not cite any particular section of West Virginia Code § 5-11-9 under

which he seeks relief. However, even the most cursory review of Defendant's arguments by the Court reveals their fallaciousness.

First, the provision Defendant quotes applies to a "labor organization." As Defendant is not a "labor organization,"[2] West Virginia Code § 5-11-9(3) is completely irrelevant to Plaintiff's claim. Second, Defendant is simply wrong that Plaintiff failed to cite a particular code section. In the very first line of the Complaint, Plaintiff specifically alleges his action is based on Defendant's violations of "the anti-retaliation and anti-harassment provisions of the [WVHRA], West Virginia Code § 5-11-9(7)(C)." *Compl*. at 1, ECF No. 1. This section provides, in relevant part, that it is "an unlawful discriminatory practices . . . [f]or any . . . employer . . . to . . . [e]ngage in any form of reprisal or otherwise discriminate against any person because he or she has opposed any practices or acts forbidden under this article[.]" W. Va. Code § 5-11-9(7)(C), in part.

Sometimes referred to as the "Opposition Clause," the West Virginia Supreme Court has long held that this clause "prohibits an employer or other person from retaliating against *any* individual for expressing opposition to a practice that he or she reasonably and in good faith believes violates the provisions of the West Virginia Human Rights Act." Syl. Pt. 11, *Hanlon v. Chambers*, 464 S.E.2d 741 (1995) (emphasis added).[3] The Court finds nothing in this provision

---

[2] A "labor organization" is defined in the WVHRA as "any organization which exists for the purpose, in whole or in part, of collective bargaining or of dealing with employers concerning grievances, terms or conditions of employment or for other mutual aid or protection in relation to employment[.]" W. Va. Code § 5-11-3(f).

[3] The phrase "Opposition Clause" is used frequently to describe the comparable antiretaliation provision found in Title VII of the Civil Rights Act of 1964, § 704(a), 42 U.S.C. § 2000e–3(a). *See Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271 (2009) (discussing application of the "Opposition Clause"). The West Virginia Supreme Court has

that limits the protection afforded therein only to those individuals who are the target of discriminatory conduct prohibited by other provisions of the WVHRA. Indeed, such a myopic approach would discourage reporting by any bystanders who do not want to jeopardize their employment by expressing opposition to WVHRA violations. Not only would this result be nonsensical, it also would be contrary to "[t]he legislative purpose . . . [of] the antiretaliation provision . . . [of] encourage[ing] people to come forward and expose unlawful employment practices and to do so without fear of reprisal." *Id.* at 754; *see also Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.,* 555 U.S. 271, 279, (2009) (stating that, if an employee reporting discrimination could be penalized without "remedy, prudent employees would have a good reason to keep quiet about Title VII offenses against themselves or against others . . . [as] [f]ear of retaliation is the leading reason why people stay silent instead of voicing their concerns about bias and discrimination" (internal quotation marks and citations omitted)).

Moreover, the West Virginia Supreme Court has explained that a retaliation claim under West Virginia Code § 5-11-9(7)(C) is independent and stands on its own from an underlying violation of the WVHRA. *See, e.g., Akers v. Cabell Huntington Hosp., Inc.*, 599 S.E.2d 769, 780 (W. Va. 2004) (holding "[t]he law is clear that a reprisal claim can stand on its own without actionable sexual harassment"). To prove a retaliatory discharge, as alleged here, Plaintiff must prove: (1) he "engaged in protected activity," (2) his "employer was aware of the protected activities," (3) he "was subsequently discharged and (absent other evidence tending to establish a

---

used the phrase in referring to the relevant section of West Virginia Code § 5-11-9(7)(C). *See Hanlon*, 464 S.E.2d at 753-54 (using the term "Opposition Clause" and stating it has "repeatedly held that [it] will construe the Human Rights Act to coincide with the prevailing federal application of Title VII unless there are variations in the statutory language that call for divergent applications or there are some other compelling reasons justifying a different result").

retaliatory motivation)," (4) his "discharge followed his . . . protected activities within such period of time that the court can infer retaliatory motivation." Syl. Pt. 4, *Frank's Shoe Store v. West Virginia Human Rights Comm'n*, 365 S.E.2d 251 (W. Va. 1986). "Protected activity" "includes opposition to a practice that the plaintiff reasonably and in good faith believes violates the provisions of the Act." Syl. Pt. 10, in part, *Roth v. DeFeliceCare, Inc.*, 700 S.E.2d 183 (W. Va. 2010). "The employee's opposition must be reasonable in the sense that it must be based on a set of facts and a legal theory that are plausible" and "the view must be honestly held and be more than a cover for troublemaking." *Id*.

In this case, Plaintiff alleges his coworkers were making racially inappropriate comments about black persons against a backdrop of people of color rarely being hired at the plant, but when they were, they did not last longer than a week or so. Once he made his initial report, he was mocked, physically assaulted, and made a second report. Shortly after making his second report, he was terminated.[4] Additionally, Plaintiff specifically alleges his termination "resulted from [his] legitimate efforts to comply with West Virginia law and his duties as an employee in seeking to have Defendant comply with the West Virginia Human Rights Act." *Compl.* at ¶30. Given these allegations, the Court finds Plaintiff has sufficiently alleged he engaged in a protected activity, Defendant was aware of the protected activity, he was discharged, and his discharge was sufficiently close in time to infer a retaliatory motive. Therefore, for purposes of a motion to dismiss, the Court finds Plaintiff has sufficiently alleged a claim under § 5-11-9(7)(C) for retaliatory discharge.

---

[4] Plaintiff asserts he made his initial report in April 2022, he was assaulted on May 10, 2022, and he was fired on May 19, 2022.

## B.
## Hostile Work Environment

Next, Defendant similarly argues Plaintiff cannot state a claim for a hostile work environment under the WVHRA because he has not alleged it is based upon his "ancestry."[5] However, Plaintiff has not alleged he faced a hostile work environment *due to his ancestry or race*. Rather, in reading the Complaint as a whole, his allegations are more aptly construed as a separate basis for establishing a claim for reprisal under § 5-11-9(7)(C)."[6]

In Count II, Plaintiff states that he "was subjected to harassment, hostility, and intimidating behavior by other employees based on his having made a protected report of racial discrimination in the workplace." *Compl.* at ¶36. Plaintiff further alleges the hostility he faced was a result of Defendant's failure "to investigate and take effective remedial action in response to [his] reports of racial discrimination[.]" *Id*. at ¶40; *see also id*. at ¶43 ("Defendant's failure . . . proximately caused the other employees to retaliate against Plaintiff, which created a hostile work environment for Plaintiff."). Plaintiff asserts the harassment was severe and pervasive and, despite knowledge, "Defendant acted with malice and with reckless indifference to Plaintiff's rights under the [WVHRA], common law, public policies, and Plaintiff's emotional and physical well-being."

---

[5] Defendant uses the terms race and ancestry interchangeably. The term "ancestry" is defined more broadly than the term race under the WVHRA. *See* Syl. Pt. 5, *Keener v. Clay Cty. Dev. Corp.*, 880 S.E.2d 63 (W. Va. 2022) (holding, in part, "[a]s used in the West Virginia Human Rights Act, West Virginia Code § 5-11-2 (2022), ancestry means discrimination based on some characteristic like race, ethnicity, or national origin that is passed down by lineal descendants").

[6] Although Plaintiff labels his claim "hostile work environment," the Court cannot rely solely upon labels in ruling on a motion to dismiss. Typically, "hostile work environment" claims arise when someone experiences harassment based upon his or her personal race, ancestry, sex, disability, religion, etc., which is not the situation here. *See Burke v. Wetzel Cty. Comm'n*, 815 S.E.2d 520, 534-35 (2018) (setting forth the elements for a "hostile work environment" and concluding the elements are essentially the same for the different protected classes).

*Id*. at ¶44. Additionally, as previously mentioned, Plaintiff begins his Complaint by asserting his claims arise "under the anti-retaliation and *anti-harassment* provisions" found in § 5-11-9(7)(C). *Id*. at 1 (emphasis added). Given these allegations, it is clear that Plaintiff does not use the phrase "hostile work environment" to describe an atmosphere in which he was the subject of inappropriate remarks based upon his race. Rather, the harassment and "hostile work environment" was the "reprisal" he faced as a direct result of Defendant's alleged shortcomings in addressing the situation after he filed his reports. As "reprisal" is actionable under § 5-11-9(7)(C), the Court finds Plaintiff has sufficiently alleged a plausible claim.

## IV.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss Plaintiff's Complaint. ECF No. 5.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: January 10, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE